## Case No. 16,406.

### UNITED STATES v. STOCKWELL et al.

[1 Hask. 447.] [1]

District Court, D. Maine. Dec., 1872.

INFORMERS—DECREE FOR PAYMENT—AGREEMENT BETWEEN INFORMERS.

1. An informer's share in the registry of the court should be decreed to be paid directly to the persons beneficially interested and entitled to hold it.

2. An agreement between informers to divide the informer's share equally is valid and should be regarded by the court in distributing it. ,

Petition by several persons that the informer's share of penalties in the registry of the court be decreed to be paid to them severally as the persons giving the information which led to the prosecution.

FOX, District Judge. In the fall of 1867, Bartlett & McCoy were detectives in aid of the revenue, assigned to the northeastern district and acting under N. W. Bingham, special agent of the treasury for the state of Maine. McCoy ascertained from one Johnson, who resided in Fredericton, N. B., that large frauds on the revenue had been committed, and to induce Johnson to afford further information, McCoy gave to him his note for five hundred dollars, but nothing definite was disclosed by Johnson as to the precise character of the frauds, or when, where, or by whom committed. In Dec. Bartlett & McCoy were instructed to go to Fredericton and if possible ascertain further in regard to this matter. They met Johnson at Fredericton who refused to make farther disclosures, and then told McCoy he had destroyed his note and absolutely declined to hold any communication with McCoy upon this subject. Bartlett, who had previously had some slight acquaintance with Johnson, and who had been present at the interview between him and McCoy which had been somewhat unpleasant in its character, that same evening sought another interview with Johnson, the result of

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

which was, that Johnson, without making any disclosures as to the transactions within Dowling's knowledge, that evening introduced McCoy & Bartlett to one Thomas Dowling, a shipping and commission merchant, doing business at Fredericton. Before Dowling would make any disclosures, he insisted that an agreement should be entered into between the four, viz., Bartlett, McCoy, Johnson and himself, respecting the informer's share in the penalties and forfeitures which might ultimately be recovered of the guilty parties. He refused to be known as the informer himself, and insisted that McCoy or Bartlett should institute the proceedings, prosecute them to judgment, claim as the informers, and that the amount thus received should be equally divided between the four persons. An agreement to this effect was then and there drawn up by Dowling, signed by all the parties and intrusted to Dowling for safe keeping, which agreement Dowling subsequently destroyed under the pretense that it known it might affect his credit as a witness, but it was destroyed without the authority or consent of either of the other parties so far as it now appears. After this agreement had been executed, Dowling produced his books and papers showing gross frauds to have been committed by him in shipping to Stockwell & Co. and other parties shingles, which were the production of New Brunswick but documented as American shingles, the product of Maine, in order that they might be entered free of duty, these documents being verified by Dowling's oath. By virtue of these documents the shingles were thus entered at various ports, and the government thereby defrauded of large amounts of duties.

Stockwell & Co. being the importers of various cargoes of these shingles, actions were accordingly brought against them for both duties and penalties, a trial of one of which actions was had and judgment rendered for the government, and thereupon a compromise was made of all of said actions by the payment by Stockwell & Co. of a considerable amount now on deposit in the registry, the informer's share of which amount is now the subject matter of controversy. Bartlett has filed a petition in behalf of himself, McCoy, Dowling, and Johnson, claiming that by virtue of their written agreement, they as joint informers were jointly entitled to this sum. Dowling and Johnson have also presented their petition praying that they alone may be adjudged the informers.

After Dowling had made his disclosures to the officers, he agreed to furnish in ten days to Bartlett, who was to continue in that neighborhood, copies verified by his affidavit of all papers in his possession relating to these frauds, which he did, and soon after these papers were produced by McCoy, Bartlett, and Bingham, to the judge of the district court of Maine, accompanied by McCoy's affidavit and petition for a warrant to search the premises of Stockwell & Co., which was

issued and their books and papers seized, and they afforded important testimony in behalf of the government upon the trial of the action against them. It is now claimed in behalf of Dowling that he was in fact the sole informer; that from him McCoy and Bartlett obtained the information which established the guilt of Stockwell & Co., and that these officers were then acting only in compliance with the instructions of their superior officers in obtaining this information from Dowling and presenting it to the district judge as evidence to authorize the search warrant. It is quite certain that most important evidence was thus elicited from Dowling without which the government would not have been able to ferret out the fraud and its perpetrators; but this evidence was communicated to the officers where they had no official authority whatever, and moreover was not the only evidence offered in the trial to establish the guilt of the parties, as their own books and papers were very important testimony in fixing upon them a guilty knowledge. Of all the claimants, Johnson appears to have contributed the least to the success of the undertaking, and yet he is joined with Dowling in the petition that they may be adjudged entitled to the whole share. Under the decisions of this court, there can be no question that a revenue officer under certain circumstances may be entitled to claim as an informer; and I am of opinion that these four persons having each borne their respective parts in procuring the necessary information and evidence which resulted in the conviction, and having in the outset agreed in writing that they would make common cause of the undertaking, would work together in accomplishing it and share equally the advantages to be realized therefrom, are thereby now precluded from any inquiry by the court as to the degree of benefit which each conferred by his individual services. Good faith requires that they should abide by their contract, and that neither of them should be permitted without the consent of the others to repudiate it and by extrinsic evidence endeavor to satisfy the court that one or more of the associates did not by his services aid equally with the others in the advancement of the common purpose. Especially should such an agreement under the circumstances be obligatory upon Dowling, as he was well aware of the amount of evidence he could produce to ensure a conviction, and before making any disclosure whatever, acting undoubtedly for his own interest as he understood it, insisted that the officers should procure such further evidence as could be obtained by them, and should prosecute the suits to judgment.

This agreement was not without consideration, being mutual, and was not in contravention of law, and if Dowling should receive the full amount. I hold he would be accountable to McCoy and Bartlett for their respective proportions of it. In the distribution of this fund, it is the duty of the court to ascertain the parties beneficially interested and who are legally entitled to hold it, and to decree the payment to them directly rather than subject them to the expense and delay of further controversy with Dowling for the recovery of their proportion from his hands if he should receive it. In suits at common law, if justice can be done between the parties directly, and circuity of action thereby be avoided, the courts do not hesitate to adopt such a course and allow the party to recover that to which he is entitled, and which he might by ulterior proceedings obtain from one who should receive it from the defendant; and this court cannot hesitate as to the propriety of applying this rule in the distribution of money in its registry, it being entirely free from any technical difficulties which sometimes arise in proceedings at common law.

It is claimed that if the court is of opinion that Dowling was within the language of the act of 1867 "the person giving the information which led to the prosecution," that then the court is bound by the provisions of that law to award to him the informer's share, although he may by his contract be bound to pay the other parties their proportions of it. Under ordinary circumstances such would probably be the result; but the court is of opinion that parties jointly engaged in such an enterprise may, as between themselves, agree as to the distribution of the informer's share; that such an agreement when fairly made is conclusive between them as to their respective rights, and should be recognized and enforced by the court as the only proper evidence in a hearing upon this question in any controversies between the parties relating thereto.

Decree that Bartlett, McCoy, Johnson and Dowling were joint informers, and that the informer's share be divided equally among them.